Hitchcock, J.,
dissenting. As it seems to me, that by the decision of this case, novel principles are introduced into the law, relative to the lien.of a vendor of real estate upon the estate itself, for the purchase money, I deem it necessary and . proper to state the reasons which have induced me to dissent from the opinion expressed by a majority of the Court.
I am not about to controvert the principle, that in equity, a vendor under certain circumstances, has a lien upon land sold for the purchase money. This principle has been recognized by this Court, and so far as it has been thus recognized, I am willing to sustain it. But I am free to say, that if the question was now for the first time presented for consideration, I should be opposed to the recognition of fhe principle. I should be opposed to it, because I believe it to be inconsistent with the general policy of our laws. It is a secret lien, and as such, *526 its enforcement should not be encouraged. Since 1831, such has been the policy of our laws, that even a mortgage can have no effect, until it is made public by being deposited with the Recorder of the county to be recorded. Such is the express legislation of the State, and'this Court in carrying out the intention of the legislature, have decided" that a mortgage, although executed according to the forms of law, has no effect either in law or equity, until it is recorded. . 13 Ohio R., 148; 14 Idem, 430. Although the policy of this legislation has been doubted by many of those who have made the law their study, and who have formed their opinions from reading English books and English decisions, still I have nb doubt that on the whole, it will be found to be beneficial to the State, and the people of the State. Cases may, and undoubtedly will arise, where we might wish the law was otherwise, but such cases cannot and ought not to be permitted to interfere with a policy which must conduce to the general good. It must and always will so happen,' that in the administration of the law, injustice will be done ,in particular cases. By the enforcement of a vendor’s lien, we defeat this general policy of the law. Or, if we do not entirely defeat it, we very materially depart from it. To show that I am not alone in ■ the opinion, that the recognition of this vendor’s lien is inconsistent with the policy of this State, and of other States in this Union, I refer to the case of Kauffelt v. Bower, 17 S. & R., 64, in which Gibson J. says, in delivering the opinion of the Court, “ the doctrine of lien has never been encouraged by the legislature; but has barely been tolerated in particular cases and under severe restrictions. Nor can I conceive how it ever came to be considered a principle of general equity anywhere, that a vendor who has divested himself of every particle of right that can pass by deed, shall nevertheless have an available interest in the land.” And Duncan, J. says, “ the doctrine of implied lien here is a novel one, lately imported, and opposed to the policy of our government, which is to leave this species of property altogether free to alienation, unincumbered with secret trusts, or concealed liens.”
*527 There is no necessity for the ends of justice that this doctrine of implied lien, for it is but an implied lien, should sustained. If the vendor intends to rely upon the estate as security for the purchase money, he can retain the estate in his own hands, until the purchase money is paid. Or if he parts with the title, he can at the same time take back a mortgage and place the same upon record. In either case he secure, and does not place it in thp power of the vendee defraud him, or any subsequent purchaser. But if he parts with the title without such security, he leaves it in the power of the vendee to commit a fraud. Such person may sell to an innocent purchaser without notice, and receive the entire consideration money. But if, before the deed is executed, the second purchaser receives notice that full payment has not been made to the original vendor, he must lose both money and land. Nothing can protect such subsequent purchaser, unless before receiving notice, he has paid the entire purchase money, and also received his deed.
Another reason why, if the question were an 'original one, I should be unwilling to recognize or sustain this implied lien, grows out of the fact, that it is a subject with which nine tenths, if not ninety-nine hundredths of our people are unacquainted. They understand what is meant by a mortgage, and what is meant by a judgment lien, but of this vendor’s lien they know nothing. Chancellor Walworth in the case of Fish v. Howland et al., 1 Paige C. R. 20, well says, “ it is probable that not one person in a hundred, who conveys or purchases real estate, is aware of the existence of such a principle of equity.”
But, although if the question were an original one, I should be unwilling to recognize and inforce the principle in our jurisprudence, still in accordance with former decisions, I am willing to inforce it to the extent to which it has been heretofore recognized and acted upon. The extent to which this Court has heretofore gone is, to establish the principle that a vendor has a lien upon the land sold for his purchase money, provided he takes no other security for its payment than the personal *528 security of the vendee. But if he takes any other security, let ^ rea^ 01 Pesona^ the security so taken must be relied upon — implied lien is extinguised. The same principle or rule prevails, as I understand, in all the other States of the Union where this implied lien is recognized. And it is a rule founded in reason, and easily understood. That is, it is founded in reason, provided there is reason in saying that a mán can have an interest in land, after having done all he could, by absolute conveyance, to divest himself of all interest.
It is now to be considered whether the complainant, in the case before the Court, is entitled to the relief sought upon principles heretofore recognized in this “ Court, or in any of the Courts of the United States or of England.
The simple facts of the case are these : The complainant, Boos, on the 27th of April, 1844, sold and conveyed to John D. Martin and Samuel Ewing, as tenants in common, for the consideration of twelve hundred dollars, a parcel of land in the neighborhood of Lancaster, Fairfield county. Of the consideration money one half was paid in hand, and a credit of six years was given for the other six hundred, which will fall due on the 27th of April, 1850. To secure this last payment a mortgage was executed on'the 4th of April, 1845, and recorded on the 21st of July of the same year. Certain of the defendants recovered judgments against Ewing, at the May term of the Court of Common Pleas of Fairfield county, 1845, executions upon which were issued and levied upon his share of, or interest in the aforesaid land. In May, 1847, Ewing’s interest in the land was sold, and the money brought into Court, whereupon this bill was filed by the complainant, seeking to appropriate to his use, so much of the money so made as will amount to one half the balance which will fall due to him, from Ewing and Martin, in April, 1850, on the ground that he as vendor has a lien upon the land, and that he is now entitled to the money, the land having been sold. It is stated in the bill that complainant when he conveyed, relied upon his lien as vendor, and that he did not intend to relinquish this lien by taking the *529 mortgage. This allegation I suppose to be merely the s'uggestion of counsel, and no way material; but if material, it is denied in the answers, and there is no testimony to sustain it. There is no suggestion in the bill but that Ewing and Martin are abundantly able to pay the remaining six hundred dollars, nor, but that the land which remains unsold, and which is covered by the mortgage, is ample security.
Now here is a case in which it is manifest that the vendor did not trust to the personal security of the vendee, for the whole or any part of the purchase money, or if he originally trusted to such personal security, he ceased to trust to it when he took the mortgage on the fourth of April, 1845. From that time he relied upon the collateral security furnished by the mortgage, and his implied lien as vendor was extinguished. At least such has been the law as heretofore understood in this State, and in the other States of the Union. And I venture to say, that a case cannot be found in the English books to the contrary. The simple question presented in this aspect of the case is this, where the vendor takes a mortgage upon the premises sold, to secure the purchase money, is the equitable implied lien extinguished, or has the vendor a double lien, that is to say, a lien as vendor, and a lien by the mortgage ? A majority of the Court say that the implied lien is not extinguished by the express lien of the mortgage, but that the two liens continue to exist together. To my mind it is clear, that the implied lien is merged in the express lien, and that the two are inconsistent the one with the other, and cannot exist together, and such I understand to be the uniform current of authorities.
Chancellor Kent, in speaking of this lien of a vendor, says, “■in several cases it is held, that taking a bond from the vendee for the purchase money, or the unpaid part of it, affected the vendor’s equity, as being evidence it was waived, but the weight of authority, and' the better opinion is, that taking a bond, note or covenant, from the vendee for the payment of the money, is not of itself an act of waiver of the lien, for such instruments, are only the ordinary evidence of the debt. But *530 taking a note, bill or bond, with distinct security, or taking distinct security exclusively by itself, either in the shape of real or personal property from the vendee, or taking the responsibility of a third person, is evidence that the seller did not repose upon the lien, but upon independent security, and it discharges the lien,” 4 Kent’s Com. 153, 2d Ed. Such is the principle which has heretofore been recognized by this Court, and it has been so uniformly recognized by the American Courts, that it may well be denominated the American principle, and if it does in any respect vary from the English principle, I should be disposed to abide by the opinion of our own Jurist, and to follow the decisions of our own Courts.
From an examination of the text of Story’s Equity, it might be supposed that the Commentator differed in opinion from Chancellor Kent, but I apprehend that he should not be so understood. For in the case of Gilman v. Brown, 1 Mason’s Rep. 212, he says “ there is a strong if not decisive current of authority, to lead us to the conclusion, that merely taking the bond, note or covenant of the vendee for the purchase money will not repel the lien ; for it may be taken to countervail the receipt of the payment usually inserted in the conveyance. But where a distinct and independent security is taken, either of other property, or of the responsibility of a third person, it certainly admits of a very different conclusion. There the rule may properly apply, that expressum facit, cessare taciturn; and where the party has carved out his own security, the law will not create another in aid of it.” And again, “ in a careful examination of all the authorities, I do not find a single case in which it has been held, if the vendor take a personal, collateral security, binding others as well as the vendee, as for instance a bond or a note with a surety or indorser, or a collateral security by way of pledge or mortgage, that under such circumstances a lien exists upon the land itself.”
In the case of Cole v. Scott, 2 Washington’s Rep. 141, the President of the Court of Appeals of Virginia, says, “ the doctrine that the vendor of land not taking a security, nor making *531 a conveyance, retains a lien upon the property, is so well set-tied as to be received as a maxim. Even if he have made a conveyance, yet he may pursue the land in the possession the vendee, or of a purchaser, with notice. But if he hath taken a security, or the vendee hath sold to a third person without notice, the lien is lost.” A nd such was the decision of the Court.
In the case of Brown v. Gilman, et. al. 4th Wheaton’s R. 455, the Supreme Court of the United States held that “the equitable lien'of the vendor of land, for unpaid purchase money, is waived by any act of the parties showing that the lien is not intended to be retained, as by taking separate securities for the purchase money.”
This Court in the case of Mayham v. Coombs, et. al., 14 Ohio R. 428, held that the vendor’s lien is lost, when the vendor takes real or personal security for the payment of the purchase money. In that case the real security was a mortgage on the premises sold.
Such are some of the American cases, and they are all decided upon the principle that when any other security is taken for' the payment of the purchase money than the personal security of the vendee, the vendor’s lien is extinguished. Nor do I understand so far as I have been able to examine, that a different principle is settled by the Courts in England. True, in the case of Mackreth v. Symmons, 15 Vesey, 329, 342, Lord Eldon seems to consider, that whether taking a distinct security will have the effect to extinguish the implied lien, depends altogether upon the circumstances of each case, and that no rule can be laid down universally ; and that therefore it is impossible for any purchaser to know, without the judgment of a Court, in what cases a lien would, and in what cases it would not, exist. His language is, “ if on the other hand, a rule has prevailed, as it seems to be, that it is to depend, not upon the circumstance of taking a security, but upon the nature of the security, as amounting to evidence, as it is sometimes called, or to declaration plain, to manifest intention, the expression used upon *532 other occasions, of a purpose to rely, not any longer upon the but upon the personal credit of the individual, it is obvithat a vendor, by taking a security, unless by evidence, manifest intention, or declaration plain, he shows his purpose, cannot know the situation in which he stands, without the judgment of a Court, how far that security does contain the evidence, manifest intention, or declaration plain, upon that point.” If there be so much uncertainty in England upon this subject, it is matter of regret, and it is to be hoped that that which has heretofore been considered certain, in this country, will not be rendered uncertain by the interpolation of a new principle in the decision of this case. Well might the Chancellor express regret, as he deos, that this implied lien had ever been enforced in the English Courts.
It is believed, however, notwithstanding what is said by Lord Elden, as before quoted, that it may even in England, in some cases at least, be known when the vendor’s lien is extinguished, without resort to a Court. In 2 Sugden 60, it is said, “ If the vendor take a distinct and independent security for the purchase money, his lien on the estate is gone, such a security is evidence that he did not trust to the estate as a pledge for his money.” And again upon the same page, “ and the same rule must prevail, it has been said, where a vendor accepts a mortgage of another estate, for the purchase money, the obvious intention of burthening one estate being, that the other shall remain free and unincumbered; so even where the vendor takes a mortgage of the estate sold for only part of the purchase money; because, by taking a mortgage for part, he clearly evinces his election, that the estate should be charged with that part only.” And again on page 61. “A bond and a mortgage of part of the estate, have been held to exclude the lien over the rest of the estate. But it seems that taking a covenant, bond or note, for the purchase money, will not affect the vendor’s lien.” And in one case it was held, where the receipt of the purchase money was indorsed on the deed, and a bond given for its payment, that the vendor’s lien was extin *533 guished. There is but one case of this description, so far as I know, in the English books.
I am not aware, however, that upon the points so far red to, there is any difference of opinion between the majority of the Court and myself. For I understand it to be admitted, that if a vendor takes independent personal security, if he take real security upon a different estate, if he take as security a part of the estate sold, the equitable lien is extinguished. But if he take a mortgage upon the entire estate sold, then it is said the equitable lien continues, because he thereby shows that it is his intention to rely upon the estate for the purchase money. True, he manifests his intention to rely upon the estate for the purchase money; but at the same time he manifests his intention, not to rely upon his secret implied lien. On the contrary he takes an express lien — one that is open and notorious — and to me it would seem strange, if this should fail him, that he can ever resort to the implied lien, which I must think was merged in that which is express. But upon this point we are not without authority.
The case of Fish v. Howland et al, 1 Paige C. R. 20, is a case in point. The facts of the case, so far as they bear upon the one now before this Court, are as follows: On the 10thof February, 1813, one Samuel Howland, then about 86 years of age, conveyed his farm to the defendant, David Howland, his grandson, with whom he expected to reside the remainder of his life; and took back a life lease, at a nominal rent. In 1816, David Howland conveyed to his brother Pontus, one half of said farm; and in 1825, Pontus conveyed his interest to one of the defendants to the bill. The Chancellor refuses to sustain the prayer of the bill, and in pronouncing his opinion against the lien, went into an elaborate review of the authorities, both English and American, after which he remarks as follows:
“ It appears, from this review of the English cases, that the question as to what shall be considered a waiver of the implied lien upon the land conveyed, for the unpaid purchase money, is still unsettled in that country. But I am gratified to find that *534 in the American cases, so far as I have been able to discover, wilh one excepb°n, there is a uniform current of authority in of what I consider, at this day, as the only correct rule on the subject/ — a rule which will enable vendors and purchasers to understand their respective rights, without the necessity of resorting to a Court of chancery, to give a construction to the varying circumstances of each particular case.”
Again, the Chancellor says:
“ Lord Eldon seems to think that the question of lien or no lien, depends altogether upon the intention of the parties, and that each case must be determined upon that principle, and upon its own peculiar circumstances. If the actual intention of the parties was to govern the decisions of the Court, the lien would seldom be maintained, for it is propable that not one person in a'hundred, who conveys or purchases real estate, is aware of the existence of such a principle of equity. A much safer rule, I apprehend, is to sustain the implied lien, whenever the vendor has taken the mere personal security of the purchaser only; and to consider any bond, note, or covenant given by the vendee alone, as intended only to countervail the receipt of the purchase money contained in the deed, or to show the time and manner in which the payment is to be made, unless there is an express agreement between the parties to waive the equitable lien; and on'the other hand, to consider the lien as waived, when any security is taken on the land or otherwise, for the whole or any part of the purchase money, unless there is an express agreement that the equitable lien shall be retained. This constitutes a safe rule, easily understood, and which I consider established by a weight of authority in this country which is not easily shaken. And, I believe, no English case previous to the revolution, will be found in opposition to these principles.” This ease of Farnell v. Hulis, is the one in which it was ruled by the English Chancellor that where the consideration was indorsed as received, and a bond.given to secure the payment, the vendor’s lien was extinguished.
“Applying this rule,” says the Chancellor, “ to the case now *535 under consideration, the lien which is claimed in this case upon the land conveyed by Samuel Howland, cannot be sustained. He did not rely upon any implied lien upon the farm for purpose, but carved out his qwn-security, for his support, by direct incumbrance upon the estate conveyed.”
The case of Little and Telford v. Brown, 2 Leigh’s Rep. 353, which was decided in the Court of appeals of Virginia, arose upon the following state of facts: by deed of bargain and sale; dated March, 1819, Brown sold and conveyed to Wilsons, four lots of land, and the Wilsons executed a deed of trust, on the 30th of the same month, conveying the same 'lots; in trust, to secure the payment of the purchase money to Brown, in instalments, stipulating that the said Wilsons should take the rents and profits, arising from the same to their order; and in another deed of trust, dated 19th October, 1819, the Wilsons, in order to secure a debt to Little and Telford, conveyed the same lots, and the'rents and profits, to a trustee, upon trust that he should sell the same to satisfy the debt. The controversy, in a great measure,’ was as to. the rents and profits.
The Court say “ The deed of trust to secure the debt to Brown expressly stipulated that the Wilsons should enjoy the rents and profits, until-the 25th February, 182~, and Brown could not have acquired the possession, nor consequently received the rents and profits, until that day, either by an action at law or by a bill in equity ; and the deed of trust to secure the debt to Little and Telford expressly conveyed the rents and profits arising from the 9th of October, 1821. That is, the Wilsons conveyed by the last deed, the very right which they had reserved by the first. The circumstance that the first deed of trust was for the purchase money of the property, has no effect upon the question as to the rents: For, 1. The implied lien for the purchase money, which would have existed if the deed of trust had not been given, was utterly destroyed by the execution of that deed, and whatever effect that implied lien • might have had upon the question, it is superseded by the deed.”
*536 I have been the more particular in quoting from the last two ’cases, because they were decided by intelligent and respectable American Courts, and because in each one the question was presented, whether a security taken upon the land sold, operated to extinguish the vendor’s lien —the principal question presented in the case now under consideration, and in each case it was decided, that under such circumstances the lien was extinguished. And here I will remark, that no case has been referred to in the argument, nor have I been able to find any reported case, in which the contrary dictrine is established. Still these authorities are disregarded and overruled by a majority of the Court in the decision of the case now under consideration, and the rule which Chancellor Walworth thought was too well established by American authority to be easily shaken, is overthrown. And why is it so ? Upon what is the decision of this particular point based? Certainly not upon decided cases. So far as precedent is concerned, the only authority hitherto adduced is a dictum of Lord Eldon in the case of Makreth v. Symmons, (15th Ves. 329,) already referred to, that it did not appear to him a violent conclusion as between vendor and vendee, that notwithstanding a mortgage, the lien should subsist, and especially where the mortgage was upon the estate sold, for in such case the mortgage itself would show that the vendor intended to rely upon the estate as his security. Upon an examination of this whole case it will be seen that no question was in fact raised, whether by taking a mortgage upon the estate sold, the lien was extinguished, nor was any such question in fact decided.
Now I feel all due respect for the Courts both of common law and Chancery of England, but I cannot consent that the mere dictum of an English Chancellor shall be held of higher authority than the solemn decisions of our own American Courts.
Although the question of the most practical importance in this case is, whether by taking security upon the estate sold a vendor relinquishes his equitable lien, and which question is *537 answered by a majority of the Court in the negative, still there are other matters involved which to my mind furnish insuperable objections to a decree in favor of the complainant. I pose no one will doubt that had the mortgage of the fourth of April, 1845, been recorded before May of the same year, we should never have heard of a vendor’s lien in the complainant. It was not so recorded, and consequently the defendants, or a number of them, acquired liens upon the land by judgments, prior in point of time to the recording of the mortgage, and therefore «uperior or preferable to the lien of the mortgage. And herein consists the sole reason for this proceeding. The complainant was guilty of laches and neglect in procuring his mortgage to be recorded, and consequently the judgment liens attached. These liens attached not because the mortgage was imperfect, but in consequence of the sheer neglect of' the mortgagee. But complainant having thus in part lost the benefit of his mortgage, seeks to avail himself of his lien as vendor, for the purpose of overreaching the liens of judgment creditors. Now it does seem to me, in any aspect in which I can see this case, that the only reason which the complainant has to come into this Court, grows out of his own negligence and laches, and although a Court of equity might relieve an individual against the negligence and laches of another, I have never known such Court to relieve a man from difficulties which he may have got into in consequence of his own laches or negligence.
Again, from any thing which appears in the bill, both Ewing and Martin are abundantly able to pay the balance of purchase money which will fall due in 1850. There is no intimation -that either of them are insolvent, or are likely to become insolvent, nor is it pretended but that the money due is well secured by the mortgage. To me it seems to be a question worthy of consideration, whether under such circumstances a vendor can resort to his lien upon the land. Whether he should not, in the first place, exhaust the personal property of the vendee before he resorts to this lien. Upon *538 this point I do not feel confident as to the practice. In the case of Carson v. Green et al., 1 Johns. C. R. 303, which was a bill to enforce a vendor’s lien, I find it stated in the bill that a suit had been prosecuted at law, and the personal property exhausted, and in deciding the case, the Chancellor says, “ the failure of the personal estate, is sufficiently shown in the first instance, and there is nothing to gainsay it,” and then proceeds to decree the sale of the real estate pursuant to the prayer of the bill. True, it is not settled in the case cited, that the lien of the vendor cannot be resorted to until other sources, from which to compel payment, fail. Still such an inference may fairly be drawn from the case. It is urged, however, by the counsel for complainant, that the lien of a vendor is but a mortgage in equity, and as in the case of a mortgage in fact, the mortgagor may, in the first instance, resort to a Court of equity to compel the sale of the mortgaged premises to make the money secured, so the vendor may resort to a Court of equity to enforce his equitable mortgage. It may be so, and as at present advised I shall not undertake to controvert the position. But admitting it to be so, and considering the case in that light, it is clear to my mind that the present bill 'ought not to be sustained, nor the relief prayed for, granted.
The land in controversy was sold by the complainant, Boos, to Ewing and Martin, as tenants in common. One half the purchase money was paid by the purchasers jointly, and their joint notes given for the balance, with no other security than the personal security of the vendees. Under these circumstances the vendor had an implied lien upon the land for the purchase money. But this was not a lien upon one half the land, for one half the purchase money still due, but a lien upon the whole land for the entire purchase money. Subsequently in April, 1845, the purchasers executed to the vendor a mortgage upon the same premises to secure the payment of the remaining purchase money. To this mortgage there were two parties, the mortgagors and the mortgagee. The instrument itself was a joint instrument of the mortgagors, and it covered the entire *539 property originally purchased. This instrument the mortgagee received, and by so doing, in my opinion, waived or extinguished his equitable lien or mortgage. My brethren, however, hold otherwise. If, however, it was not extinguished, it was not changed but still remained an equitable lien or mortgage upon the entire land, to secure a joint debt due from the two purchasers to the vendor. The note given for the purchase money was a joint note, the mortgage executed by the purchasers to secure the payment of the note was a joint mortgage, and if this equitable lien is to be treated as an equitable mortgage, that too must be considered as being joint. Such being the situation the vendor may sue upon his note, not however until it falls due; he may proceed upon his mortgage, or he may enforce his equitable lien.
Now suppose he should elect to sue upon his note, would he commence a suit against one of the makers for one half of the note, and another suit against the other for the other half? Or could he commence a suit against both the makers for one half the note, leaving the other half unpaid ? No one will hesitate to say, that such a course of proceeding could not be sustained. The contract being an entire one, could not thus be divided. And if two suits could be sustained in this manner upon the same note, double that number might be.
Suppose the vendor should elect to proceed upon his mortgage, could he file his bill against one of the mortgagors to enforce the payment of one half the money due, and a like bill against the other mortgagor to enforce payment of the other half? Or could he file his bill against the two mortgagors, to compel the payment of one half only of the purchase money, by the sale of one half the land, the balance of the purchase money remaining still due ? It seems to me every person must answer these questions in the negative. And yet this is precisely the case before the Court, except that the object is to enforce the equitable, not the legal mortgage. The effort made is not to enforce the vendor’s lien or equitable mortgage, to secure the payment of the entire debt, but of one half the debt. It is *540 not to enforce payment by the sale of the entire land, but to 'enforce the payment of one half the debt, by the sale of one -half the land. It is no answer to this difficulty to say that the object in view is not to enforce the lien upon the land, but upon the money which is the avails of the land. The express object of the bill is to enforce the vendor’s lien, and if that cannot be enforced upon the land, surely it cannot be upon the money As the purchase money is not due, the vendor comes into this Court as a mortgagee, claiming distribution of the avails of land which has been sold at the suit of other persons, but to which he would have been entitled in preference to those persons, had Iiis. mortgage matured. In such case, he may if he elect, come into Court and claim the money, thereby affirming the sale, or he may disregard the sale, and when his mortgage matures, proceed against the land. But if he comes in and claims a distribution, he must make such a case as would entitle him to a decree for the sale of the land, had his mortgage matured. Surely no such case is made here. This is a bill filed by an equitable mortgagee, having a debt due from the joint debtors, secured by the mortgage, to make one half the debt from one half the mortgaged premises, leaving the balance of the debt still due by both the joint debtors, and the other half of the land still bound for the balance of the debt. The avowed object is to collect that portion of the debt which is supposed to be due from Ewing, because his undivided half of the land has been sold upon execution. And for- whose benefit ? Certainly not for the benefit of Boos, for he is perfectly secured for his purchase money. He has the personal security of both Ewing and Martin, and there is no pretence but that they are abundantly able to pay, and in addition to this, he has a mortgage which confessedly binds one half the land sold to pay one half the purchase money. If any one is benefitted by the decree in this case, it is not Boos the vendor, but Martin the joint purchaser with Ewing, and his co-obligor. Such is the effect of the decree, and yet no one principle connected *541 with the subject of such equitable liens, is better settled than this, that no one can derive any advantage from the vendor’s lien, except the vendor himself, and his privies in estate.
If I am wrong in supposing that the proceedings in this case are not in harmony with ordinary legal, or equitable proceedings ; if it be sound doctrine that a payee of a promissory note, made by two individuals, may treat that note as if one half was due from one of those individuals, and the other half from the other, and may bring separate suits accordingly; if a mortgage executed to secure the payment of such a note, may in like manner be enforced, then there is another difficulty in the way. In a note so executed, admitting each one of the makers to be a principal for one half the amount of the note, and no more, yet he must be held to stand in the light of a security for the other half. This, I presume, will not be contradicted. Apply this principle to the case now under consideration, and what is the consequence ? The complainant, Boos, sold the land to Ewing and Martin, received one half the purchase money, and the joint note of the purchasers for the residue. If this note is divisible, and it seems to me that it must be so considered, in order to sustain the present proceedings, then each one of the makers is principal for his half of the note, and security for his co-maker for the other half. Ewing is principal debtor for three hundred dollars, and security for Martin for the other three hundred ; and so, Martin is principal debtor for three hundred dollars, and security for Ewing for the other three hundred. It seems to me that we necessarily get into this dilemma, by attempting to afford the relief prayed for; and if so, it follows that Boos took collateral personal security for the purchase money of the land sold, and in such case it is admitted on all hands, that the equitable lien is extinguished.
I have now stated some of the reasons which induce me to dissent from the opinion of a majority of the Court, in this case. I object to that decision, because I believe it to be inconsistent with the law upon the subject of vendor’s liens, as heretofore construed and acted upon in this and every other *542 State in the Union, where the existence of this lien is recognized; because by it, decisions made in the Court of Chancery jSfew York, and the Court of appeals in Virginia, and which are directly in point, are overruled; because, by it, an American rule, which is said by Chancellor Walworth to be too well settled by authority to be easily shaken, is overthrown ; because its effect will be, as I apprehend, to introduce into this branch the law, the same uncertainty which is said to prevail in England; because it is inconsistent with the general policy of our laws, as to real estate; because no better reason can be alleged for the interference of this Court, than the negligence of the party seeking relief; because the relief sought, cannot be granted without interfering with the harmony of legal and equitable proceeding, in the enforcement of contracts; and because the relief, when granted, does not result to the benefit of Boos, the vendor of the land, but to the benefit of Martin, and of the purchasers.